ELLEN M. MAHAN
Deputy Chief, Environmental Enforcement Section
Environment & Natural Resources Division
KARL J. FINGERHOOD (PA Bar ID No. 63260)
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611, Washington, D.C. 20044-7611
Telephone: (202) 514-7519
E-mail: karl.fingerhood@usdoj.gov
Attorney for the United States of America

XAVIER BECERRA
Attorney General of the State of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, Deputy Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
State Bar No. 150432
Telephone: (213) 269-6333
Attorneys for Plaintiff California Department of Toxic Substances Control

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA and CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | CV 18-00234-AB (FFMx) ) CIV. NO. ~~2:18-cv-234-ODW-JEM~~ ) ) ) ) CONSENT DECREE |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JERVIS B. WEBB COMPANY and JERVIS B. WEBB COMPANY OF CALIFORNIA, | ) ) ) ) |
| Defendants. | ) |

# TABLE OF CONTENTS

I.     BACKGROUND .................................................................................1

II.    JURISDICTION ...............................................................................4

III.   PARTIES BOUND .............................................................................4

IV.   DEFINITIONS ..................................................................................4

V.     PAYMENTS FOR RESPONSE COSTS ........................................7

VI.   FAILURE TO COMPLY WITH CONSENT DECREE....................8

VII.  COVENANT NOT TO SUE BY UNITED STATES.......................9

VIII. RESERVATION OF RIGHTS BY UNITED STATES ....................9

IX.   COVENANT NOT TO SUE BY DTSC .......................................10

X.     RESERVATION OF RIGHTS BY DTSC.....................................10

XI.   COVENANT NOT TO SUE BY SETTLING
       DEFENDANTS ...............................................................................11

XII.  EFFECT OF SETTLEMENT: CONTRIBUTION
       PROTECTION ................................................................................12

XIII. ACCESS TO INFORMATION.....................................................14

XIV. RETENTION OF RECORDS ........................................................15

XV.  NOTICES AND SUBMISSIONS ................................................17

XVI. RETENTION OF JURISDICTION ..............................................18

XVII. APPENDICES ...............................................................................19

XVIII. LODGING AND OPPORTUNITY FOR PUBLIC
       COMMENT....................................................................................19

XIX. SIGNATORIES/SERVICE ..........................................................19

XX.  FINAL JUDGMENT .....................................................................20

# I.   BACKGROUND

A.   The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the California Department of Toxic Substances Control ("DTSC"), filed a complaint ("Complaint") in this matter against Jervis B. Webb Company ("JBW") and Jervis B. Webb Company of California ("Webb-Cal") (collectively "Settling Defendants"). In the Complaint, the United States alleged claims against Webb-Cal pursuant to Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607(a), seeking injunctive relief and reimbursement of response costs incurred or to be incurred at the Jervis B. Webb Superfund Site in South Gate, Los Angeles County, California (the "Site"), and alleged a claim against JBW seeking to avoid certain transfers of assets from Webb-Cal to JBW under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.* ("FDCPA"). DTSC separately alleged claims in the Complaint against Webb-Cal that it is liable to DTSC under Section 107 of CERCLA, 42 U.S.C. § 9607 and/or applicable state laws, for reimbursement of costs it has incurred for response actions at the Site.

B.   The Settling Defendants do not admit any liability to the United States or to DTSC arising out of the transactions or occurrences alleged in the Complaint.

C.   JBW is a Michigan corporation with its principal place of business in Farmington Hills, Michigan.

D.   Webb-Cal was a California corporation from 1949 until its dissolution in 2003. JBW was a shareholder in Webb-Cal from the time of Webb-Cal's incorporation until its dissolution. From 1992 until the dissolution of Webb-Cal, JBW owned 100% of the shares of Webb-Cal, and Webb-Cal was a wholly owned subsidiary of JBW.

E.   The Site is approximately 3.82 acres in size and contains two adjacent

parcels of land. The Site is depicted on the map attached as Appendix A.

F.  From approximately 1953 to 2003, Webb-Cal owned and operated portions of or the whole of the Site. At various times during its ownership and occupancy, Webb-Cal manufactured cranes and conveyors on the Site. From approximately 1975 to 1984, Webb-Cal leased a portion of the Site to Blake Rivet Company ("Blake"). Blake manufactured aircraft rivets on a portion of the Site from the 1950s until approximately 1984. Blake has ceased doing business and is insolvent.

G.  Hazardous substances, such as the volatile organic compounds perchloroethene and trichloroethene, were detected in Site soils and groundwater in sampling performed pursuant to directives of the California Regional Water Quality Control Board between 1997 and 2005.

H.  In April of 2006, the California Regional Water Quality Control Board transferred oversight of the Site to DTSC.

I.  On October 23, 2008, DTSC sent a letter to the "Jervis Webb Company of California," which transmitted a draft Imminent and Substantial Endangerment Determination and draft Consent Order.

J.  On February 2, 2010, DTSC issued an Imminent and Substantial Endangerment Order to JBW and the current owners of the Rayo and Firestone properties.

K.  On January 18, 2011, DTSC referred the Site to EPA to assume lead oversight responsibilities. In performing the response actions at the Site, DTSC has incurred response costs and may incur additional response costs in the future.

L.  Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on May 5, 2012, 77 Fed. Reg. 27,368.

M.  EPA has undertaken a Remedial Investigation ("RI") of the Site

pursuant to 40 C.F.R. § 300.430. The RI commenced in 2014 and is ongoing at the time of the lodging of this Consent Decree. In performing this response action at the Site, EPA has incurred response costs and will incur additional response costs in the future.

N.     The United States and DTSC allege in the claim against Webb-Cal that, from its commencement in the 1950s to its cessation in the 1980s, manufacturing operations at the Site released hazardous substances such as trichloroethene and perchloroethene to the soils and groundwater at and beneath the Site and have caused the United States to incur costs of response at the Site. The United States and DTSC further allege in the Complaint that Webb-Cal is liable for all past and future costs of response to hazardous substances at the Site pursuant to section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2). Webb-Cal does not admit any liability to the United States under CERCLA.

O.     The United States alleges in the claim against JBW that:

1)     At the time of its dissolution, Webb-Cal transferred to JBW and JBW received from Webb-Cal all of Webb-Cal's remaining assets in an amount exceeding $2.7 million.

2)     At the time of its dissolution, Webb-Cal was indebted to the United States for the costs incurred and to be incurred in response to the hazardous substances released at and from the Site.

3)     The transfer of all its assets to JBW by Webb-Cal at the time of its dissolution rendered Webb-Cal insolvent.

4)     The transfer of assets from Webb-Cal to JBW was made with the intent to hinder, delay, or defraud the United States as creditor of Webb-Cal.

5)     On the basis of the allegations in O(1) – (4), *supra*, the United States alleges that JBW is liable to the United States for the value of the assets received by JBW from Webb-Cal pursuant to the provisions of sections 3304 and 3306 of the FDCPA, 28 U.S.C. §§ 3304 and 3306. Settling Defendant JBW does

not admit any liability to the United States under the FDCPA.

P. The United States, DTSC, and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 3306 and 42 U.S.C. §§ 9607 and 9613(b) and supplemental jurisdiction over claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a), and also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States, DTSC and upon Settling Defendants and their heirs, successors and assigns. Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or the FDCPA or in regulations promulgated thereunder shall have the meaning assigned to them in CERCLA or the FDCPA or in such regulations. Whenever terms listed below are used in this

Consent Decree or in any appendix attached hereto, the following definitions shall apply solely for purposes of this Consent Decree:

a. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

b. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c. "Day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

d. "DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

e. "DTSC" shall mean the California Department of Toxic Substances Control, and its successor departments, agencies, or instrumentalities.

f. "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

g. "EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies or instrumentalities.

h. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i. "FDCPA" shall mean the Federal Debt Collection Procedure

Act, 28 U.S.C. § 3001 *et. seq.*

      j.    "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

      k.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

      l.    "Parties" shall mean the United States, DTSC, and Settling Defendants.

      m.    "Plaintiffs" shall mean the United States and DTSC.

      n.    "Response Costs" shall mean all costs at or in connection with the Site not inconsistent with the National Contingency Plan incurred or to be incurred by the United States or DTSC.

      o.    "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

      p.    "Settling Defendants" shall mean Jervis B. Webb Company and Jervis B. Webb Company of California and their respective past and present officers, directors, shareholders, corporate successors, and trustees.

      q.    "Site" shall mean the Jervis B. Webb Superfund Site, in South Gate, Los Angeles County, California, depicted generally on the map attached as Appendix A and the areal extent of hazardous substances released at or from the Site.

      r.    "State" shall mean the State of California.

      s.    "Transfer" shall mean the transfer of not less than $2.7 million from Webb-Cal to JBW in connection with the corporate dissolution of Webb-Cal.

t.    "United States" shall mean the United States of America and each department, agency and instrumentality of the United States, including EPA.

## V.    PAYMENTS FOR RESPONSE COSTS

4.    <u>Payment by the Settling Defendants</u>

a.    Within 30 days after the Effective Date, Settling Defendants shall pay to EPA $3,450,000.00 (Three Million, Four Hundred and Fifty Thousand Dollars) in payment for Response Costs and in avoidance of the Transfer and $50,000.00 (Fifty Thousand Dollars) to DTSC for Response Costs.

b.    The total amount to be paid by Settling Defendants to EPA pursuant to Paragraph 4(a) shall be deposited by EPA in the Jervis B. Webb Special Account to be retained and used to conduct or finance response actions at or in connection with the Site or to be transferred by EPA to the EPA Hazardous Substance Superfund.

5.    <u>Payment Instructions for Settling Defendants</u>

a.    All payments to the United States shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California, Western Division. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made by this Consent Decree.

b.    All payments made under Paragraph 5(a) shall reference the CDCS Number, Site/Spill ID Number 09WR, and DOJ case Number 90-11-3-10965. At the time of any payment required to be made in accordance with Paragraph 5(a), Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XV (Notices and Submissions) and to the EPA Cincinnati Finance Office by email at

acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

        c.      Within 30 days after the Effective Date, Settling Defendants shall pay to DTSC $50,000 by official bank check(s) made payable to California Department of Toxic Substances Control. Settling Defendants shall send the bank check(s) to Accounting, California Department of Toxic Substances Control, 1001 "I" Street, 21st Floor, P.O. Box 806, Sacramento, CA 95812-0806.

## VI.    FAILURE TO COMPLY WITH CONSENT DECREE

        6.    Interest on Late Payments. In the event that any payment required under Paragraph 4(a) is not made by the date required, Settling Defendants shall pay Interest to EPA and/or DTSC on the unpaid balance. The Interest to be paid on late payment under this Paragraph shall begin to accrue on the date due. The Interest shall accrue through the date of Settling Defendants' payment.

        7.    Stipulated Penalty.

        a.      If any amounts due under Paragraph 4 are not paid by the required due date, Settling Defendants shall be in violation of this Consent Decree, and shall pay to EPA and/or DTSC as a stipulated penalty, in addition to the Interest required by Paragraph 6, $1,000 per day that any payment is late.

        b.      Stipulated penalties are due and payable within 30 days of the date of the demand for payment by EPA and or/DTSC. All payments to EPA and/or DTSC under this Paragraph shall be identified as "Stipulated Penalties." All payments to EPA and/or DTSC under this Paragraph shall be made pursuant to the instructions in Paragraph 5 (Payment Instructions for Settling Defendants).

        c.      Penalties shall accrue as provided in this Paragraph regardless of whether EPA and/or DTSC has notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties

shall begin to accrue on the day after payment is due and shall accrue through the date of payment.

8.     Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States and/or DTSC by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

9.     Notwithstanding any other provision of this Section, the United States and/or DTSC may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties due to EPA or DTSC that have accrued pursuant to this Consent Decree.

## VII.     COVENANT NOT TO SUE BY UNITED STATES

10.     In consideration of the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in this Paragraph and in Paragraph 11 (Reservations of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to all response actions taken or to be taken at the Site and all Response Costs incurred or to be incurred at the Site, or to sue or take administrative action against Settling Defendants pursuant to Sections 3304 and 3306 of the FDCPA, 28 U.S.C. §§ 3304 and 3306, for claims relating to or arising from the Transfer. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendants and do not extend to any other person.

## VIII.     RESERVATION OF RIGHTS BY UNITED STATES

11.     The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not

expressly included within the United States' covenants. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.  liability for failure of Settling Defendants to meet a requirement of this Consent Decree;

b.  liability arising from the past, present, or future disposal, release, or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site;

c.  liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d.  liability based on Settling Defendants' transportation, treatment, storage or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance at or in connection with the Site, after signature of this Consent Decree by the Settling Defendants; and

e.  criminal liability.

## IX.  COVENANT NOT TO SUE BY DTSC

12.  In consideration of the payments that will be made by Settling Defendants under the terms of this Consent Decree and except as specifically provided in Section X (Reservations of Rights by DTSC), DTSC covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), California Health and Safety Code Sections 25323.5, 25355.5, and 25360 relating to Response Costs. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendants and do not extend to any other person.

## X.  RESERVATION OF RIGHTS BY DTSC

13.  DTSC reserves, and this Consent Decree is without prejudice to, all

rights against Settling Defendants with respect to all matters not expressly included within DTSC's covenants. Notwithstanding any other provision of this Consent Decree, DTSC reserves all rights against Settling Defendants with respect to:

a. liability for failure of Settling Defendants to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site;

c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d. liability based on Settling Defendants' transportation, treatment, storage or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance at or in connection with the Site, after signature of this Consent Decree by the Settling Defendants; and

e. criminal liability;

f. liability for violations of State law that occur during or after implementation of the Work.

## XI.    COVENANT NOT TO SUE BY SETTLING DEFENDANTS

14.    Settling Defendants covenant not to sue, and agree not to assert any claims or causes of action against, the United States or DTSC with respect to the Site, and this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, 113, or any other provision of law;

b. any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C § 6972(a), or state law regarding the Site and this Consent Decree; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

15.      Settling Defendants' covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set out in Paragraph 11, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

16.      Settling Defendants' covenants not to sue shall not apply in the event DTSC brings a cause of action or issues an order pursuant to the reservations set out in Paragraph 13, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that DTSC is seeking pursuant to the applicable reservation.

17.      Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

18.      Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action under Sections 107(a) and 113 of CERCLA or equivalent provisions of the California Hazardous Substance Account Act that they may have for response costs relating to or arising from the Site against any person.  These waivers shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XII.      EFFECT OF SETTLEMENT:  CONTRIBUTION PROTECTION

19.      Except as provided in Paragraph 15, nothing in this Consent Decree

shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Nothing in this Consent Decree diminishes the right of the United States or DTSC, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

20.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C § 9613(f)(2), and that Settling Defendants are each entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by federal or state law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all claims for Response Costs incurred or to be incurred at or in connection with the Site by the United States, DTSC, or by any other party and all claims under the FDCPA in connection with CERCLA liability for the Site relating to transfers of assets between Settling Defendants at the dissolution of Webb-Cal. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States or DTSC has reserved its rights under the Consent Decree (except for claims for failure to comply with this Consent Decree) in the event that the United States or DTSC asserts rights against Settling Defendants coming within the scope of such reservations.

21.     Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and DTSC in writing no later than 60 days prior to the initiation of such suit or claim.

22.     Each Settling Defendant shall, with respect to any suit or claim

brought against it for matters related to this Consent Decree, notify in writing the United States and DTSC within ten days after service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify the United States and DTSC within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial for matters related to this Consent Decree.

23. In any subsequent administrative or judicial proceeding initiated by the United States or DTSC for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DTSC in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section VII (Covenant by United States Not to Sue) and Section IX (Covenant by DTSC Not to Sue).

## XIII.   ACCESS TO INFORMATION

24. Settling Defendants shall provide to EPA and DTSC, upon request, access to copies of all records, reports, documents and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.

25. Business Confidential and Privileged Documents.

a. Settling Defendants may assert business confidentiality claims

covering part or all of the Records submitted to the United States and/or DTSC under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b), or as to DTSC, state law. Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA and/or DTSC, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.      Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law or, as to DTSC, state law. If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide the United States and/or DTSC with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants. No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or DTSC on the grounds that they are privileged or confidential.

## XIV.   **RETENTION OF RECORDS**

26.     Until five years after entry of this Consent Decree, each Settling Defendant shall preserve and retain all non-identical copies of records (including records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

27.     At the conclusion of the record retention period, Settling Defendants shall notify the United States and DTSC at least 30 days prior to the destruction of any such records, and, upon request by the United States or DTSC, Settling Defendants shall promptly deliver any such records to EPA and/or DTSC. Settling Defendants may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal or, as to DTSC, state law. If Settling Defendants assert such a privilege, they shall provide the United States and DTSC with the following:  (a) the title of the record; (b) the date of the record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the record; and (f) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a record, the record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only. Settling Defendants shall retain all records that they claim to be privileged until the United States and/or DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor. However, no records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

28.     Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States, and that it has fully complied with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

## XV. NOTICES AND SUBMISSIONS

29. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DTSC, DTSC, and the Settling Defendants, respectively.

As to the United States:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C. 20044-7611
> Re: DJ # 90-11-3-10965

As to EPA:

> Karen Jurist
> EPA Project Coordinator
> United States Environmental Protection Agency
> Region IX
> 75 Hawthorne St.
> San Francisco, CA 94105
>
> Re: Jervis B. Webb Superfund Site

As to DTSC – California Attorney General:

> Olivia W. Karlin
> Deputy Attorney General
> California Department of Justice

1 | 300 South Spring Street
2 | Los Angeles, California 90013
3 |
4 | As to DTSC Office of Legal Counsel:
5 |
6 | Larry McDaniel
7 | Senior Attorney
    | Department of Toxic Substances Control
8 | P.O. Box 806
9 | Sacramento, California 95812-0806
10 | As to DTSC:
11 |
12 | Dot Lofstrom, PG
13 | Division Chief
    | Brownfields and Environmental Restoration Program
14 | P.O. Box 806
15 | Sacramento, California 95812-0806
16 |
17 | As to Settling Defendants:
18 | General Counsel
19 | Jervis B. Webb Company
    | 34375 W. Twelve Mile Road
20 | Farmington Hills, MI 48331-5624
21 | with a copy to:
22 |
23 | Michael Scott Feeley, Esq.
    | John C. Heintz, Esq.
24 | Latham & Watkins LLP
25 | 355 S. Grand Ave.
    | Los Angeles, CA 90071, Suite 100
26 |

**XVI.   RETENTION OF JURISDICTION**

30. This Court shall retain jurisdiction over this the matter for the purpose

of interpreting and enforcing the terms of this Consent Decree.

## XVII. APPENDICES

31. The following appendices are incorporated into this Consent Decree: "Appendix A" is the map of the Site.

## XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

32. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States and DTSC each reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

33. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party, and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XIX. SIGNATORIES/SERVICE

34. Each undersigned representative of a Settling Defendant to this Consent Decree, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and DTSC certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

35. Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or DTSC has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

36.     Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XX.    FINAL JUDGMENT

37.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, DTSC and Settling Defendants.  The Court finds that there is no just reason for delay, and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS 24TH DAY OF ____June____, 2018.

_____
United States District Judge

FOR UNITED STATES OF AMERICA

DATE: 1/9/18

_____
ELLEN M. MAHAN
Deputy Chief,
Environmental Enforcement Section
U.S. Department of Justice
Environment and Natural Resources Division

_____
KARL J. FINGERHOOD (PA. Bar ID No. 63260)
Senior Counsel,
Environmental Enforcement Section
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C.  20044-7611

Telephone: (202) 514-7519
Telefax: (202) 514-0097

e-mail: karl.fingerhood@usdoj.gov

Of Counsel:

JIM COLLINS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA  94105

Telephone: (415) 972-3894

e-mail: collins.jim@epa.gov

21

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

DATE: _November 9, 2017_

_fr/_ _[signature]_

ENRIQUE MANZANILLA
Director, Superfund Division
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

FOR THE STATE OF CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL

DATE: _11-1-17_

Dot Lofstrom, PG
Division Chief,
~~Brownfields & Environmental~~
Restoration Program

FOR SETTLING DEFENDANT JERVIS B. WEBB COMPANY


DATE: _____                    _____
                                         Timothy Hund, President




Authorized Agent for Service of Process Pursuant to Paragraph 36:

Michael Scott Feeley, Esq.
John C. Heintz, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA  90071, Suite 100

FOR SETTLING DEFENDANT JERVIS B. WEBB COMPANY

DATE: _Sep. 1, 2017_             _____
                                         Timothy Hund, President

Authorized Agent for Service of Process Pursuant to Paragraph 36:

Michael Scott Feeley, Esq.
John C. Heintz, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA 90071, Suite 100

FOR SETTLING DEFENDANT JERVIS B. WEBB COMPANY OF
CALIFORNIA


DATE: Sep. 1, 2017                    _____
                                      Timothy Hund
                                          President, Jervis B. Webb Company,
                                          as Former Shareholder of
                                          Jervis B. Webb Company of California


Authorized Agent for Service of Process Pursuant to Paragraph 36:

Michael Scott Feeley, Esq.
John C. Heintz, Esq.
Latham & Watkins LLP
355 S. Grand Ave.
Los Angeles, CA 90071, Suite 100